

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-18-00058-CR

———————————————————

DAVID ORR, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 432nd District Court
Tarrant County, Texas
Trial Court No. 1433990D

Before Kerr, Pittman, and Womack, JJ.
Memorandum Opinion by Justice Pittman

## MEMORANDUM OPINION

A jury convicted Appellant David Orr, also known as David Endsley, of aggravated assault with a deadly weapon, and the trial court sentenced him to ten years' confinement. In two points, Appellant contends that the trial court erred by allowing the State to reopen its case-in-chief in the guilt phase (Point Two) and violated his right to confront the witnesses against him by considering the presentence investigation report (PSI) in deciding his punishment (Point One). Because we hold that Appellant forfeited both points, we affirm.

## BRIEF FACTS

Sometime between noon and 2:00 p.m. on Saturday, October 17, 2015, Appellant's teenaged daughter Dee[1] and her mother (Mother) drove their Tahoe to the Fort Worth neighborhood in which they had previously lived and had a verbal, roadway confrontation with a group of women (the Group) occupying another vehicle. The Group included driver Sophia Jones and her close friend Sheretta Bright. After the confrontation, Mother stayed in the neighborhood park visiting with acquaintances, and Dee drove off to pick up a friend and then to a local convenience store. The Group drove off to pick up three girls around Dee's age and ultimately went to the same convenience store. Dee's Tahoe was parked outside the store when

---

[1]We use aliases to refer to Appellant's daughter, who was a minor at the time of the offense, and her mother. *See* Tex. R. App. P. 9.10(a); *Daggett v. State*, 187 S.W.3d 444, 446 n.3 (Tex. Crim. App. 2005); *Wilson v. State*, 442 S.W.3d 779, 782 n.1 (Tex. App.—Fort Worth 2014, pet. ref'd).

the Group arrived. The younger members of the Group fought Dee and her friend in the parking lot and allegedly took Dee's car keys. The Group then drove back to Sophia's apartment.

Sheretta went inside the apartment, leaving its door open to the outside, but the others stayed outside, lounging on the tailgate of her vehicle. Soon Sheretta heard, "Is this where Sophia live[s]?" She looked out the apartment door and saw someone driving down the street in a white Avenger with its windows down. Then Sheretta saw Dee and Mother walking down the street toward Sophia's apartment, yelling and cursing at the Group. Sheretta became concerned when she saw Dee put her hand in her purse and heard her tell Sophia, "I'll shoot you bitches," so Sheretta told the Group to come inside. The Avenger continued to drive up and down the street. Then Sheretta told another woman in the Group, Latasha, to call the police. While Latasha was speaking to the 911 operator, Sheretta heard Dee say, "Daddy, shoot," and then Sheretta heard gunshots. Sheretta was shot in the hip by a bullet that penetrated the apartment's window. She and Sophia both identified Appellant as the shooter.

Appellant's defense at trial was that someone else had committed the offense and that he could not have been the shooter because he was at the barbershop with his son when the shooting occurred. Mother and Dee, testifying for the defense, denied that Appellant had been near the crime scene, and they stated that a man named Demarcus Cummings had been the shooter and that he had shot at them.

3

Appellant produced testimony from a college student he had raised, another barbershop client, and Gregory Brown, the barber who had cut his son's hair on the day of the shooting. They all testified that Appellant had been at the barbershop on the afternoon of the shooting. Brown specifically testified that Appellant had arrived at the barbershop around 2:15 p.m. and had not left until around 4:00 p.m. at the earliest. Brown also testified that the day after the shooting, Appellant told him he might need to give a statement on Appellant's behalf.

In rebuttal, the State presented the testimony of Leon Ray, the barbershop owner and Appellant's own barber. Ray testified that Appellant was at the barbershop on the afternoon of the shooting but that Ray did not know exactly when. Ray also testified that Appellant could have come, gone, and returned without Ray's noticing. In cross-examining Ray, Appellant offered (and the trial court admitted) Ray's November 9, 2015 notarized statement alibiing Appellant. In the written statement, Ray stated that on October 17, 2015, he called Appellant around 1:45 p.m., Appellant arrived at the barbershop around "2 something," and he "stayed at least a couple of hours."

After Appellant challenged the State's offering during its rebuttal his recorded interview with Detective Emelia Howard, who had already testified, the trial court allowed the State to reopen its case-in-chief and admitted the interview, in which Appellant said the shooter had been a man named Maurice. The trial court also admitted additional testimony by Detective Howard challenging Appellant's credibility

4

and theory of the case. For example, Detective Howard testified that Appellant reported the convenience-store assault of Dee to the police the Monday after the shooting but did not discuss a shooter until his police interview, which was more than a week later. The trial court also admitted the testimony of Dr. Ricardo Coronado of Tarrant County College (TCC) who testified that Appellant had never worked at TCC, rebutting Appellant's false claim in the interview that he taught there.

After Appellant's conviction, a PSI was prepared, and the trial court considered it in determining Appellant's sentence.

## DISCUSSION

### I. Appellant Forfeited His Complaint About the State's Reopening Its Case-in-Chief; Even So, It Lacks Merit.

In his second point, Appellant contends that the trial court abused its discretion when it allowed the State to reopen its case-in-chief. After the State called Ray, Appellant's barber, to testify on rebuttal that Appellant could have left the barbershop and come back on the afternoon of the shooting, the State recalled Detective Howard and sought to introduce Appellant's recorded interview, at first as rebuttal evidence. Appellant objected:

- [T]hey want to use it to rebut one specific statement that [Mother] made regarding, I believe, [Appellant's] employment with TCC, and at the end of the day, it's really just an interview of [Appellant]. It goes far . . . and beyond what a normal rebuttal would go to as far as any statement made by anyone else[;]

- Specifically from [Appellant's] standpoint, Your Honor, is they had their opportunity when the detective was on the stand while

5

their case was open. They closed without calling the detective to bring in statements of [Appellant].

They're now trying to offer his statement as a rebuttal to— way more than what they're trying to rebut, which are just a couple of snippets of statements that are out there[; and]

- [Appellant] has not testified in this case, Your Honor. What they're trying to do is offer testimony now when the proper time to do that would have been during the case-in-chief. This is not proper rebuttal testimony.

After the last objection listed above, the following occurred:

| | |
|---|---|
| THE COURT: | All right. So are you asking leave to reopen so you can offer the exhibit? |
| [PROSECUTOR]: | State would ask to reopen. |
| THE COURT: | Fine. Granted. State's 43 will be admitted. |

(State's Exhibit No. 43 admitted)

| | |
|---|---|
| THE COURT: | Are there any other objections? |
| [DEFENSE COUNSEL]: | No other objections, Your Honor. |

The prosecutor published the interview to the jury after defense counsel stated, "It's previously been viewed by Defense, Your Honor. We have no objection." The prosecutor also further questioned Detective Howard, highlighting inconsistencies between Appellant's interview regarding the shooting and his earlier police report of Dee's assault, and then questioned TCC employee Coronado to show that Appellant's statement to Detective Howard in the interview that he taught at TCC was false, all with no objection.

6

## A. Appellant Did Not Object to the Reopening of the State's Case-in-Chief.

In arguing his second point, Appellant contends that the trial court erred by allowing the State to reopen its case-in-chief because his interview, Detective Howard's additional testimony highlighting discrepancies between the interview and Appellant's earlier police report of the assault on Dee, and TCC employee Coronado's testimony could not materially change the case in the State's favor. However, these are not the complaints Appellant raised in the trial court.

Because it is a systemic requirement, this court should independently review error preservation, and we have a duty to ensure that a claim is properly preserved in the trial court before we address its merits. *Darcy v. State*, 488 S.W.3d 325, 327–28 (Tex. Crim. App. 2016); *Wilson v. State*, 311 S.W.3d 452, 473 (Tex. Crim. App. 2010). To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion stating the specific grounds, if not apparent from the context, for the desired ruling. Tex. R. App. P. 33.1(a)(1); *Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016). Further, it is long-settled that an accused's unqualified, affirmative acceptance of evidence forfeits an appellate challenge to that evidence. *See Estrada v. State*, 313 S.W.3d 274, 302 (Tex. Crim. App. 2010); *Holmes v. State*, 248 S.W.3d 194, 200 (Tex. Crim. App. 2008). Finally, the complaint made on appeal must comport with the complaint made in the trial court or the error is forfeited. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012);

*Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009) ("A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial."); *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) ("Whether a party's particular complaint is preserved depends on whether the complaint on appeal comports with the complaint made at trial."). To determine whether the complaint on appeal conforms to that made at trial, we consider the context in which the complaint was made and the parties' shared understanding at that time. *Clark*, 365 S.W.3d at 339; *Resendez v. State*, 306 S.W.3d 308, 313 (Tex. Crim. App. 2009); *Pena*, 285 S.W.3d at 464.

Here, Appellant forfeited all complaints about the interview by affirmatively accepting the exhibit, and he forfeited his appellate complaints about the trial court's allowing the State to reopen its case-in-chief by not complaining about that reopening in the trial court. *See Rezac v. State*, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990) ("An objection stating one legal basis may not be used to support a different legal theory on appeal."); *see, e.g.*, *Rodriguez v. State*, No. 08-09-00233-CR, 2010 WL 4983482, at *2 (Tex. App.—El Paso Dec. 8, 2010, no pet.) (not designated for publication) (holding general objection to the State's reopening did not preserve due process claim); *Wyatt v. State*, 268 S.W.3d 270, 272–73 (Tex. App.—Amarillo 2008, no pet.) (same).

**B.    The Trial Court Did Not Abuse Its Discretion by Allowing the State to Reopen Its Case-in-Chief.**

Even if Appellant had preserved his complaint, we would reject it.

We review a trial court's decision to reopen the evidence for an abuse of discretion. *Peek v. State*, 106 S.W.3d 72, 79 (Tex. Crim. App. 2003). Article 36.02 of the Texas Code of Criminal Procedures provides, "The court shall allow testimony to be introduced at any time before the argument of a cause is concluded, if it appears that it is necessary to a due administration of justice." Tex. Code Crim. Proc. Ann. art. 36.02. That statute "limits the trial court's discretion to reopen a proceeding and hear more evidence only once argument has concluded." *Swanner v. State*, 499 S.W.3d 916, 920 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (citing *Peek*, 106 S.W.3d at 79). Thus, a trial court's decision to reopen is discretionary even when the request to reopen responds to a motion for directed verdict, *Boatright v. State*, 472 S.W.2d 765, 770 (Tex. Crim. App. 1971), *Vann v. State*, No. 02-09-00274-CR, 2010 WL 3193521, at *2 (Tex. App.—Fort Worth Aug. 12, 2010, no pet.) (mem. op., not designated for publication), or to a venue objection just before closing arguments, *Ahmad v. State*, 295 S.W.3d 731, 746–47 (Tex. App.—Fort Worth 2009, pet. ref'd) (op. on reh'g).

Because the trial court granted the State's request to reopen its case-in-chief before closing arguments, it did not abuse its discretion.

We overrule Appellant's second point.

**II. Appellant Forfeited His Complaint About the Trial Court's Considering the PSI; Regardless, the Complaint is Meritless.**

In his first point, Appellant contends that his right to confront the witnesses against him during the punishment phase was violated when the trial court considered the PSI. As with his other challenges on appeal, Appellant did not contemporaneously object to the trial court's consideration of the PSI but instead affirmatively indicated that he had no objections:

| | |
|---|---|
| THE COURT: | Previously the jury found you guilty of the offense of aggravated assault with a deadly weapon. And the Defense, your lawyer and you requested a Presentence Investigation Report to be prepared. One has been prepared. |
| | State, Defense, do you have any objections to the Presentence Report as prepared? |
| [PROSECUTOR]: | Not from the State. |
| [DEFENSE COUNSEL]: | None from the Defense. |
| THE COURT: | Any objection to the Court receiving that as an exhibit, place it under seal? |
| [PROSECUTOR]: | Not from the State. |
| [DEFENSE COUNSEL]: | No, Your Honor. |
| THE COURT: | All right. That will be made part of the clerk's file under seal with the clerk of the court. |

To reiterate, to preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion stating the specific grounds, if not apparent from the context, for the desired ruling. Tex. R. App. P.

33.1(a)(1); *Thomas*, 505 S.W.3d at 924. Further, it is axiomatic that an accused's unqualified, affirmative acceptance of evidence forfeits an appellate challenge to that evidence. *See Holmes*, 248 S.W.3d at 200; *Sell v. State*, 488 S.W.3d 397, 399 (Tex. App.—Fort Worth 2016, pet. ref'd). We therefore hold that Appellant failed to preserve his complaint.

Appellant argues that he did not need to preserve his complaint because the law is so well-settled that an objection would have been futile. *See Ex parte Hathorn*, 296 S.W.3d 570, 572 (Tex. Crim. App. 2009). This court has previously expressed reservations about that precise argument. *See Sell*, 488 S.W.3d at 398–99. Even if Appellant's preservation argument were correct, however, he would still lose on the merits. *See id.* As Appellant acknowledges, the Texas Court of Criminal Appeals has held that when the trial court—instead of a jury—assesses punishment, the "PSI is not subject to the Confrontation Clause." *Stringer v. State*, 309 S.W.3d 42, 48 (Tex. Crim. App. 2010); *Sell*, 488 S.W.3d at 398–99. We are bound by that precedent. *Sell*, 488 S.W.3d 399; *see Hailey v. State*, 413 S.W.3d 457, 489 (Tex. App.—Fort Worth 2012, pet. ref'd) ("This court is bound by, and has no authority to disregard or overrule, the precedent of the court of criminal appeals."). We overrule Appellant's first point.

## CONCLUSION

Having overruled Appellant's two points, we affirm the trial court's judgment.

/s/ Mark T. Pittman
Mark T. Pittman
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  March 21, 2019